By the Court.
 

 Plaintiff’s contentions, reduced to their fundamentals, may he summarized thus: That upon the invitation and request of The Guardian Trust Company, plaintiff entered into a contingent agreement of subscription, which was not to become absolute and binding upon him except upon the contingency that he should continue in the employ of The Guardian Trust Company until February 15, 1934; that on June 15, 1933, the Superintendent of Banks took possession of the assets of The Guardian Trust Company for the purpose of liquidation; that thereupon The Guardian Trust Company ceased to do business as a banking institution and plaintiff ceased to be an employee; that the contingency upon which the agreement of subscription was based ceased and failed, and the agreement at no time became binding upon him; that all amounts of money deducted from his salary and applied on the stock subscription therefore never became the property of The Guardian Trust Company; that consequently he is entitled to its return.
 

 The Superintendent of Banks contends, substantially, that the agreement of subscription was absolute; that its effectiveness was not made to depend upon any contingency; that the parties intended, the plan contemplated, and the instrument provided, substantially, that the subscription should be absolute; that it contained a provision that if plaintiff should cease to be an employee of The Guardian Trust Company — never contemplating the bank’s failure — that his stock should be repurchased by The Guardian
 
 *162
 
 Trust Company for reallotment among its employees, 'and that plaintiff was to be repaid all monies deducted from his salary on account of such stock purchase; that the repurchase was to be made for reallotment only and did not contemplate repurchase subsequent to insolvency when no reallotment was possible.
 

 It therefore becomes material to inquire into the nature and legal effect of .the written instrument in question, especially' that portion thereof reading: “* * * in the event of my ceasing to be an employee of said The Guardian Trust Company prior to February 15,1934,1 or my estate shall receive back in cash from said Trustee the full aggregate amount by which this note has been reduced, whereupon my right, title and interest in said stock shall cease and said stock shall be thenceforth subject to control and disposition by the President for reallotment.”
 

 The above quoted provision cannot be regarded as a condition precedent to plaintiff’s liability upon his subscription agreement. His promise to pay the purchase price for the stock was absolute and not made contingent upon continuity of his employment with The Guardian Trust Company to February 15, 1934. Such provision was not a condition of payment, and the instrument was not a continuing offer by the subscriber to purchase stock in the future, but constituted a present valid and binding obligation.
 

 “A person who purchases corporate stock from a corporatiqn under an agreement giving him an option to resell the stock to the corporation within a specified time at the price paid therefor, does not make a conditional purchase of the stock, but becomes the absolute and unconditional owner thereof.” 7 Ruling Case Law, 237, Section 210.
 

 A conditional subscription is one on which payments cannot be enforced by the corporation until after the occurrence or performance of conditions specified therein. 10 Ohio Jurisprudence, 325, Section 225.
 

 
 *163
 
 In a conditional subscription, tbe corporation binds itself “to do something before the subscription becomes obligatory, the subscription being a continuing offer by the subscriber, which becomes binding when accepted by the corporation by the performance of the condition imposed.” 10 Ohio Jurisprudence, 326, Section 225.
 

 It must be noted that the stock subscribed for had been issued, true, not to the subscriber personally, but to a person by the instrument designated as trustee. Payments were made upon the subscription and dividends were paid upon the stock. It is apparent that plaintiff was to enjoy the rights and privileges of a stockholder from the time of subscription.
 

 “ * * * if it appears to have been the intention that the subscriber should have the rights and enjoy the privileges of a stockholder from the time the subscription was made,” then the “subscription is deemed absolute, and the condition an independent or special term.” 1 Thompson on Corporations (3rd Ed.), 988, Section 714.
 

 “Where a subscription was on the condition that the subscriber should be given a position in the company, and on failure to comply the subscription should be null and void, it was held not to be on a condition precedent, as it clearly contemplated that the subscriber should become a stockholder before he should be employed.”
 
 Supra.
 

 Can the promise to pay back to plaintiff his money be enforced as against the Superintendent of Banks in charge of liquidation? We must bear in mind that the trust company is insolvent and in liquidation and the rights of creditors have intervened, and authority exists for the proposition that a stockholder who holds the promise of the corporation to buy his stock at his option cannot exercise the option and enforce the promise after the corporation has become insolvent.
 
 *164
 

 McIntyre
 
 v.
 
 E. Bement’s Sons,
 
 146 Mich., 74, 109 N. W., 45, 10 Ann. Cas., 143.
 

 The weight of authority is that “a contract by a corporation to purchase shares of its own stock will not be enforced by the courts after the corporation has become insolvent. The reason for this holding is placed not upon the ground that a corporation has no power to buy its own stock, but on the ground that when the rights of creditors intervene it would amount to a fraud on the creditors to enforce the contract.” 10 Ann. Cas., 145, note, and authorities there cited.
 

 In the
 
 McIntyre case, supra,
 
 at page 78, the court said: “The contention of counsel for plaintiff that if the promise when given was valid, subsequent insolvency of the maker would not make it invalid, is, as to the usual and ordinary contracts of corporations and individuals, sound. But the promise of such a corporation to buy its own stock, if under any circumstances valid, must be considered as made, and accepted with the understanding that the shareholder may not, in face of insolvency of the company, change his relation from that of shareholder to that of creditor, escaping the responsibilities of the one and receiving the benefits of the other. To this rule there appears to be no exception.”
 

 The right to enforce such provision is not denied as between the parties where rights of creditors have not intervened. It is this intervention that affects enforcement.
 

 We hold that the instrument in question constituted an unconditional- and absolute agreement of subscription and is in no manner affected by plaintiff’s inability to enforce that stipulation in the agreement providing for the repurchase of the stock and reimbursement of the money paid in.
 

 It follows that the judgment of the Court of Ap
 
 *165
 
 peals must be reversed and that of the Court of Common Pleas affirmed.
 

 Judgm&nt reversed.
 

 Weygandt, C. J., Stephenson, Williams, Jones, Matthias, Day and Zimmerman, JJ., concur. '